UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lee A. Eckford,                                    Case No. 3:16-cv-2150

    Plaintiff

    v.                                             MEMORANDUM OPINION

Materion Brush Inc.,

    Defendant

## I. INTRODUCTION

Before me is the motion for summary judgment filed by Defendant Materion Brush Inc. (Doc. No. 25). Plaintiff Lee A. Eckford filed a memorandum in opposition, (Doc. No. 25), and Defendant replied, (Doc. No. 27).

## II. BACKGROUND

Before retiring in February 2017, Eckford was employed by Materion for nearly thirty-two years. (Doc. No. 21 at 7). From 2008 through 2015, he alleges he heard the plant manager, Randy Drummond, use the racially-derogatory term "buckwheat" on three occasions, once to address Eckford directly. (*Id.* at 53-55, 72-73, 82-84). Eckford finally complained to Human Resources after the third time in May 2015. (*Id.* at 57, 65, 76-79). Human Resources promptly addressed the complaint with Drummond and asked Eckford to accept an apology directly from Drummond. (*Id.* at 78-79, 82). Eckford refused the apology, considering it an inadequate remedy. (*Id.* at 80, 82).

Around the same time in 2015, Human Resources was also investigating complaints made against Eckford by his subordinates, who alleged Eckford had discouraged them from bringing certain concerns to the attention of Human Resources. (*Id.* at 37-46). Pursuant to the investigation,

Eckford was questioned twice. The first occurred on or around March 19, 2015, and resulted in a written warning. (Doc. No. 26-18). The second occurred two months later on May 28, 2015. (*Id.*). Eckford claims he was "held against [his] will" during the second interview because he did not wish to participate. (Doc. No. 21 at 36-46;119-22). Following this interview, Eckford sent an email to multiple people at Materion, expressing his dissatisfaction at the fact that complaints against him resulted in a warning, while his complaint against Drummond resulted only in an apology offer. (Doc. No. 26-14). After no one responded to the email and no further action was taken, Eckford filed an EEOC Charge alleging the March and May disciplinary measures were taken due to his race. (Doc. No. 21 at 132; Doc. No. 26-14; Doc. No. 26-18).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. DISCUSSION

Eckford asserted hostile work environment and retaliation claims under both Title VII and Ohio law. Materion moves for summary judgment on all claims. At the outset, I will note that since Title VII case law is "generally applicable" to claims asserted under O.R.C. § 4112.02, both the federal and corresponding state law claims will be analyzed under the same standard. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981).

"Title VII of the Civil Rights Act of 1964…provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." *Univ. of Tex. S. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). There are two categories of conduct prohibited by Title VII. *Id.* First, Title VII prohibits status-based discrimination, including "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Nassar*, 570 U.S. at 342 (citing 42 U.S.C. § 2000e-2(a)(1)). Second, it prohibits employers from retaliating against an employee "on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Nassar*, 570 U.S. at 342 (citing 42 U.S.C. § 2000e-3(a)). Eckford asserts Materion engaged in both types of prohibited conduct.

Because Eckford seeks to prove his Title VII claims by circumstantial evidence, the claims are analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (retaliation) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (hostile work environment). That is, the burden is first on the employee to establish a *prima facie* case of retaliation by a preponderance of the evidence. *Burdine*, 450 U.S. at 252. If the employee does so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, the employee must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

A. **HOSTILE WORK ENVIRONMENT**

A hostile work environment, actionable under Title VII, exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'…that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment[.]'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). To establish a *prima facie* case as to this claim, Eckford must show:

> (1) [he] is a member of a protected class; (2) [he] was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability.

*Clay*, 501 F.3d at 706. The final two prongs remain in dispute.

1. **Unreasonable Interference**

As correctly noted by Eckford, the fourth prong does not demand a showing that the harassment interfered with his ability to do his job. Instead, Eckford must demonstrate the work environment was both objectively and subjectively hostile, considering the totality of the circumstances. *See Harris*, 510 U.S. at 21-22; *Clay*, 501 F.3d at 707. That is, Eckford must show not only that he perceived the harassment as "severe or pervasive," but a reasonable person would feel the same. *Id.* When determining whether Eckford has satisfied this burden, some factors that may be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *Clay*, 501 F.3d at 707.

For purposes of this prong, the court "must not conduct separate analyses based on the identity of the harasser" or view individual instances of harassment in isolation. *Williams v. Gen Motors Corp.*, 187 F.3d 553, 562-63 (6th Cir. 1999). Rather, the court must assess the cumulative effect of all instances of harassment by every perpetrator. *Id.*; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (stating hostile work environment claims "are based on the cumulative effect of individual acts."). The inquiry is not limited solely to harassment directed at the plaintiff, but also includes "evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a derogatory term had been used." *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999); *see also Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 718-19 (6th Cir. 2012) (clarifying

4

that only those instances of harassment of which plaintiff was *individually aware* may be considered in the totality of the circumstances analysis).[1]

Here, Eckford is aware of three times Drummond referred to a black person as "buckwheat," a racially derogatory term. (Doc. No. 21 at 72-73, 82-84). The first was in 2008, when Drummond directed the term at Eckford. (*Id.* at 53). Although Drummond never addressed Eckford by the term again, Eckford heard Drummond say it twice in his presence in the seven years that followed. (*Id.* at 72-73, 80-81).

Other than Drummond, Eckford incurred no racial harassment that was so such as subjectively "severe or pervasive." One woman told Eckford to kiss her "white ass," but Eckford testified it was merely about the lack of respect, "[i]t didn't matter whether she said 'white ass' or to 'kiss her ass.'" (*Id.* at 68-69). Eckford also testified to racially-derogatory graffiti in the bathroom he had not seen in "years." (*Id.* at 95). The remainder of the allegations concerning the harassment of black employees consist merely of "rumors, conclusory allegations and subjective beliefs…[, which] are wholly insufficient evidence to establish a claim of discrimination as a matter of law."[2] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). No one at Materion ever directed a racially-derogatory remark toward Eckford. (*Id.* at 71-72).

---

[1] To support the argument that the workplace was racially hostile, Eckford cites to alleged harassment experienced by Louis Garcia. (Doc. No. 26 at 7-8). But there is no evidence to suggest Eckford knew of this incident or that it had any effect on Eckford's perception of his workplace. (*See* Doc. No. 26-3 at 62 (stating Garcia never discussed the cited incident with Eckford)). Therefore, it cannot be considered.

[2] Briefly, Eckford stated the Human Resources manager Susan Lizyness treated him inferiorly because of his race. (Doc. No. 26 at 8-9). But the allegations are based on comments made to others about Eckford being disruptive during meetings. Without more than the fact that he was the only black employee, it cannot be reasonably concluded that her comments were due to his race and not because of Eckford's behavior alone. Further, though Eckford claims another employee claimed she was having "racial problems" with Lizyness, Eckford did not know the basis for this statement. (Doc. No. 21 at 100-01). Finally, Eckford alludes Lizyness did not fully investigate an incident where racial slurs were spray painted on the roof of Materion, but Eckford acknowledges that both the perpetrator and the target of the race-based harassment were outside contractors, not Materion employees. (*Id.* at 90-94).

Viewing the evidence in a light most favorable to Eckford, I cannot conclude a genuine issue of material fact remains. Even if Eckford subjectively believed the harassment was "severe or pervasive," without more, a reasonable juror could not conclude Drummond's three isolated statements, made over the course of seven years, was objectively "severe or pervasive" harassment prohibited by Title VII.

**2.  Employer Liability**

Even if Eckford was able to establish the fourth prong, he could not establish the fifth. There is no dispute that, generally, Materion would be liable for a racially hostile work environment created by Drummond, as a supervisor with authority over Eckford. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But Materion can avoid liability if it is able to prove by a preponderance of the evidence that:

> (a) [it] exercised reasonable care to prevent and correct promptly any [racially] harassing behavior, and (b) that [Eckford] unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Materion] or to avoid harm otherwise.

*Id.* at 807.[3] In this case, Eckford reported only the third instance to Human Resources. (Doc. No. 21 at 57, 65, 76-79). On receipt of the complaint, Human Resources promptly addressed the matter with Drummond and offered for Drummond to apologize directly to Eckford.[4] (Doc. No. 21 at 76-79, 82; Doc. No. 26-15). Eckford rejected the offer for an apology. (Doc. No. 21 at 80, 82). Since Materion took action to promptly correct the only complaint of which it was aware, the first element

---

[3] This test applies only when tangible employment actions, "such as discharge, demotion, or undesirable reassignment," were not taken. *Faragher*, 524 U.S. at 807. Because Eckford does not allege his resignation was a constructive discharge, I cannot infer a tangible employment action was taken. *See Penn. State Police v. Suders*, 542 U.S. 129, 140-41 (2004).

[4] Eckford alleges he contacted the hotline with the complaint twice. (Doc. No. 21 at 76-78). Once on May 14 and again on May 28. (*Id.*). The first complaint appears to have been left as a message, the second received by a live operator. (*Id.*). He received a claim number for the second complaint. (*Id.* at 78-79). The same day as the second complaint, the corporate Human Resources representative addressed the situation with Eckford in person after speaking to Drummond. (*Id.* at 79-80).

6

is satisfied. Further, because there is evidence that Eckford knew of the option to report the earlier instances to HR but chose not to do so, the second element is met as well. (*Id.* at 57-65).

Therefore, Eckford is unable to prove a *prima facie* case of hostile work environment, and summary judgment must be granted to Materion as a matter of law on both the state and federal claims.

**B.     RETALIATION**

To establish a *prima facie* case of retaliation, Eckford must show:

> (1) he engaged in protected activity, (2) this exercise of his protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Imwalle*, 515 F.3d at 544 (further citation omitted). The fourth prong "requires proof of so-called 'but-for' causation, meaning that the plaintiff must furnish evidence that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 600 (6th Cir. 2018) (quoting *Nassar*, 570 U.S. at 360). In this case, neither the third and fourth prongs are met.

For an employment action to be considered "adverse," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). Because "the significance of any given act of retaliation will often depend upon the particular circumstances," "[c]ontext matters." *Id.* at 69. As such, this objective standard encompasses a "broad range of employer conduct." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011). Essentially, if the challenged action is material in plaintiff's particular situation and a "reasonable person in plaintiff's position" would have been dissuaded from engaging in Title VII protected conduct due to that action, it is "adverse." *Burlington*, 548 U.S. at 69-70.

7

Here, Eckford claims the adverse action taken was first "holding [him] against [his] will" for forty-five minutes in a Human Resources investigatory interview related to an unrelated complaint made against Eckford. (Doc. No. 21 at 37-46). He also claims that following his formal EEOC charge, he was repeatedly "dogg[ed]" by Drummond at work with questions unrelated to the complaint, even though he rarely talked with Drummond prior to the complaint. (Doc. No. 26 at 24; Doc. No. 21 at 140).

First, there is nothing to suggest the Eckford's complaint to Human Resources was a "but for" cause of the investigatory meeting discussing the unrelated complaint. Further, a forty-five-minute investigatory interview discussing an unrelated topic would not dissuade a reasonable person from engaging in protected conduct. Therefore, Eckford cannot establish the Human Resources meeting where he felt "held against [his] will" was adverse or connected in any way to his complaint regarding Drummond's comments.

Regarding Drummond's conduct following the EEOC Charge and previous complaint to Human Resources, Eckford testified only that Drummond talked to him and asked him questions more frequently. (Doc. No. 21 at 140). Eckford does not allege Drummond asked him about the EEOC Charge or that the content of the communications was otherwise inflammatory. In fact, other than being mildly annoying, there is no evidence to suggest the more frequent communication had any adverse effect on Eckford, let alone a materially adverse effect. Therefore, even if Drummond would not have engaged in this more frequent communication "but for" the protected activity, without more, a reasonable juror could not conclude the more frequent communication was an adverse employment action which would dissuade a person from engaging in protected activity.

Because Eckford cannot establish his protected activity resulted in an "adverse" employment action, he falls short of his *prima facie* burden. Accordingly, Materion is awarded summary judgment on the state and federal retaliation claims, as well.

## V. CONCLUSION

For the foregoing reasons, Materion's motion for summary judgment is granted, and this case is closed. (Doc. No. 25).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge